IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

_____
CRAIG ZUCKER,                              )
     Brooklyn, NY 11211                   )
     Kings County,                        )
        Plaintiff,                       )
                                            )
v.                                         )
                                            )  Case No._____
UNITED STATES CONSUMER PRODUCT             )
SAFETY COMMISSION                          )
     4330 East West Highway               )
     Bethesda, MD 20814                   )
     Montgomery County,                   )
                                            )
and                                        )
                                            )
INEZ MOORE TENENBAUM,                      )
CHAIRMAN OF THE UNITED STATES              )
CONSUMER PRODUCT SAFETY COMMISSION         )
     (official capacity),                 )
     4330 East West Highway               )
     Bethesda, MD 20814                   )
     Montgomery County,                   )
                                            )
        Defendants.                      )
_____)

## COMPLAINT

     Plaintiff Craig Zucker ("Mr. Zucker"), through his counsel CAUSE OF ACTION, INC., a

501(c)(3) government accountability organization, files this complaint for declaratory and  injunctive

relief against the United States Consumer Product Safety Commission ("CPSC") and Inez Moore

Tenenbaum ("Tenenbaum"), in her official capacity as Chairman of the CPSC.

## Nature of the Case

1.      Mr. Zucker is the former General Manager of Maxfield and Oberton Holdings, LLC ("M&O"), a now-dissolved company that previously imported and sold Buckyballs® and Buckycubes®, rare earth magnetic adult executive desk toys that CPSC now seeks to recall and ban.

2.      After driving M&O out of business, CPSC has thrown its full weight against Mr. Zucker, adding him as a respondent to an administrative adjudication seeking to require him personally to conduct a CPSC-estimated $57 million recall of M&O's Buckyballs® and Buckycubes®.

3.      Mr. Zucker asks this Court to find that CPSC overreached its limited statutory authority to bring an administrative remedial action against a "manufacturer," "distributor," or "retailer" when it ignored M&O's form as a limited liability company, amended the administrative complaint against M&O to proceed against Mr. Zucker personally and wrongfully subjecting him to the CPSC's adjudicative authority.

4.      Mr. Zucker further asks this Court to find that CPSC singled him out for selective administrative adjudication to deter him and other corporate officers from exercising their freedom of speech and their right to petition government officials for redress, and/or wrongly predetermined the outcome of the administrative adjudicatory process, all in violation of the First and Fifth Amendments of the United States Constitution.

## Parties

5.      Mr. Zucker is an individual who resides in the State of New York.  He is the former General Manager of M&O.

6.      CPSC is an independent regulatory commission of the United States established by the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051 *et seq.*  It has an office and does business

at 4330 East West Highway, Bethesda, Maryland, 20814.   CPSC's office is located in Montgomery County.

7.     Inez Tenenbaum is CPSC's Chairman and she is named in her official capacity.  She also has an office and does business at 4330 East West Highway, Bethesda, Maryland, 20814.  Her office is also located in Montgomery County.

<u>**Jurisdiction and Venue**</u>

8.     This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.

9.     Venue in this District is proper under 28 U.S.C. § 1391(b), (e).

10.     The Commission's authority to proceed administratively against Mr. Zucker, and its constitutional violations, are properly before this court.

<u>**Facts**</u>

**A.     The Rise Of Buckyballs® And Buckycubes®™.**

11.     Mr. Zucker and a friend formed M&O as a Delaware limited liability company in March 2009 by filing a Certificate of Formation with the Division of Corporations of the Delaware Secretary of State.

12.     Its business was to import and sell what soon became one of the most popular adult executive desk toys on the market, Buckyballs®.

13.     Buckyballs® are small magnetic spheres, a few millimeters in diameter.  When many are placed together, they can be formed into innumerable shapes and patterns.  Manipulating the Buckyballs® into different shapes and patterns is an entertaining way to relieve stress and exercise the mind.

14.     From March to October, 2009, M&O sold Buckyballs® online on approximately three websites that predominantly featured products for adults, not children.

15.     Starting in October, 2009, it began selling Buckyballs® to gift shops, bookstores, stationery stores, museum shops, and other brick-and-mortar retailers.

16.     Before long, M&O had a distribution network of approximately 5,000 stores.

17.     Buckyballs® were an instant top-seller.  In 2011, *People Magazine* called Buckyballs® one of the five hottest trends of the year.  In 2012, they appeared on the cover of the Brookstone catalog. M&O was an overwhelming success story.

18.     Buckyballs® are completely safe when used as intended.

19.     Like many other products, they may cause harm if ingested.

20.     For this reason, M&O never marketed its products toward children.

21.     When it started selling Buckyballs® to retailers, M&O labeled its products with a prominent warning:

> **Warning:  Not intended for children.  Swallowing of magnets may cause serious injury and require immediate medical care.  Ages 13+.**

22.     M&O initially marketed its products for ages 13+ because the Consumer Product Safety Improvement Act of 2008 defined a "children's toy" as a consumer product "designed or intended by the manufacturer for a child 12 years of age or younger for use by the child when the child plays." 15 U.S.C. § 2057c(g)(B); *see also* 15 U.S.C. § 2052(a)(2) (defining "children's product").

23.     The age designation made it clear that Buckyballs® were not children's toys.

24.     In 2009, the Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, 122 Stat. 3016 (2008)("CPSIA") made a voluntary toy standard, ASTM F963, a mandatory toy standard

enforced by CPSC.  The now mandatory ASTM toy standard defined a "toy" as any object designed, manufactured, or marketed as a plaything for children under age 14.

25.     Although M&O did not believe or admit either that Buckyballs® were CPSIA toys or that they violated any legally applicable safety standards, M&O changed the label age grading from 13+ to 14+ and worked with CPSC, which was then largely supportive of M&O's safety efforts, to conduct a voluntary recall of all products labeled 13+ solely to make it crystal clear that these were not intended for children.

26.     M&O then went even further to create a comprehensive safety program to make it clear to everyone that its products should not fall into children's hands.  The program included:

    a.      Changing the warning to say "**Keep Away From All Children**" and adding language to explain the exact hazard of swallowing multiple magnets;

    b.      Including four warnings on the packaging and carrying case and one in the instructions for use;

    c.      Developing a Responsible Seller Agreement to ensure that the products would not be sold in stores that sold children's products exclusively and a Responsible Sellers Notice to inform retailers who sold both children's and adult products to sell Buckyballs® only in sections with other products intended for adults, conducting compliance checks, and removing retailers that did not meet the requirements of the new program;

    d.      Sending retailers new signage with the warnings for use in displays; and

    e.      Including Responsible Seller Notices with every shipment of Buckyballs®.

27.     CPSC approved M&O's comprehensive safety program in May, 2010.

28.     M&O then added to its product offerings Buckycubes®, small magnetic cubes that M&O marketed and sold using the same safety program developed for Buckyballs®.

29.     Buckyballs®, Buckycubes®, and offshoots like Buckyballs® Chromatics (colored Buckyballs®) comprised approximately 95% of what M&O sold.  The company's very existence depended on its ability to continue to sell these products.

30.     In furtherance of its safety program, M&O wrote to all of its retailers in September, 2011, reminding them not to sell to children under the age of 14 or to adults buying them for children under the age of 14.

31.     In November, 2011, M&O joined with CPSC in a joint press release and video news release that reinforced the importance of keeping the products away from children and the potential consequences of misuse.

32.     When the video was filmed, Defendant Tenenbaum commended M&O on its safety program.

33.     In March, 2012, M&O developed a new website, www.magnetsafety.com, and created a safety video that was shown both on the new website and on M&O's main website to raise awareness and educate parents, educators, retailers, and medical professionals about the risks of letting high-powered magnets get into the hands of children.

34.     That month, M&O also created new signage, further explaining why Buckyballs® and Buckycubes® were not for children.  M&O sent this signage to every retailer selling its products with a request that it be clipped to the in-store display.

35.     In April, 2012, M&O representatives met with CPSC commissioners and staff to educate them about its expanded safety program and to express concern about other manufacturers who were marketing similar products inappropriately.

36.     The commissioners and staff offered suggestions and again commended M&O on its safety program.

37.     Following that meeting, acting in part on recommendations from CPSC and in part on its own initiative, M&O expanded its safety program by:

a.     Forming a medical advisory group of physicians specializing in pediatric and emergency medicine and toxicology and developing a diagnosis and treatment service announcement for medical professionals to help educate them how to recognize and treat magnet ingestion;

b.     Bringing together competing companies to create an industry group called the Coalition for Magnet Safety, with the mission to "protect the public through responsible labeling, promotion, distribution, and sales of high powered, rare earth magnets intended for adult use;"

c.     Petitioning ASTM International to develop a voluntary standard for the labeling and marketing of magnet products.

**B.     The Demise Of Buckyballs® And Buckycubes®.**

38.     On July 10, 2012, everything changed.

39.     Without warning or evidence of a statistically significant number of injuries, and after years of working side-by-side with M&O in the development of its safety program, the CPSC's Office of Compliance issued a preliminary determination that M&O's products were defective and that its safety program would not work.

40.     M&O responded, expressing its strong disagreement, but CPSC paid it no heed.

41.     Instead, CPSC initiated an all-out effort to shut down M&O.

42.     CPSC immediately began contacting many of M&O's major retailers, telling them that Buckyballs® and Buckycubes® were unsafe and "requesting" them to stop selling the products.

43.     M&O's retailers almost unanimously caved in to the government's pressure and intimidation.

44.     In a last-ditch effort to regain CPSC's favor and to save its business, M&O submitted a voluntary Corrective Action Plan proposing even further expansions to its safety program, including a child-resistant carrying case, possibly a bittering agent, enhanced warnings, additional retail signs, and programs to further public awareness.

45.     CPSC received the plan at 4:00 p.m. on July 24, 2012.

46.     On information and belief, CPSC never read that plan.

47.     Instead, at 11:00 a.m. on the next day, July 25, 2012, the CPSC's executive director notified M&O's lawyer that CPSC had filed an administrative complaint against M&O, initiating a proceeding to order M&O to stop selling all of its products and to conduct a total recall of all of its products already sold.

48.     That proceeding is *In the Matter of Maxfield and Oberton Holdings, LLC*, CPSC Docket No. 12-1 (the "CPSC Proceeding"), and has since been consolidated with CPSC Docket Nos. 12-2 and 12-3, which are similar complaints against importers of similar products.  In this on-going administrative proceeding, the very question of whether M&O's products are defective or hazardous is being adjudicated.

49.     In connection with the filing of the complaint, and before M&O ever had a chance to defend itself, CPSC issued a press release and launched a media campaign announcing that it sued M&O "[i]n an effort to prevent children from suffering further harm …."

50.     At all times relevant, CPSC knew the risk of harm to children from M&O's products was statistically insignificant and, relatively speaking, much less than the risk posed by common household cleaning chemicals, laundry pods or playground equipment.

51.     But CPSC's mind was made up, the facts did not matter, and so the full weight of the government came down on a company that was, at all times, in compliance with the law.

52.     CPSC's general counsel admitted that it was not a violation of law to sell M&O's products.  *See* Ex. 1 Letter from CPSC General Counsel Cheryl A. Falvey to Alan H. Schoem, Esq. (July 20, 2012).

53.     Nevertheless, CPSC pressured retailers to stop selling Buckyballs® and Buckycubes® and to issue voluntary recalls.  The message was clear to all – do as CPSC says now, or pay for it later.

54.     CPSC's actions had their foreseeable and intended consequence.

55.     With no retailers and no product that anyone would sell in the face of CPSC's campaign of duress and intimidation, M&O was out of business in a matter of months.

56.     On December 27, 2012, M&O filed its certificate of cancellation with the Division of Corporations of the Delaware Secretary of State and ceased to be.

57.     Adding insult to injury, an assistant general counsel of CPSC wrote to the trustee of the MOH Liquidating Trust ("MOH Trust") to demand that she take possession of M&O's remaining inventory to determine what could be sold to help satisfy CPSC's claims.  She added unhelpfully, "[W]e ask that you, as transferee and assignee of [M&O]'s assets, make every effort to ensure that . . .  no

Subject Products re-enter the stream of commerce." *See* Ex. 2, Letter from CPSC Assistant General Counsel Mary B. Murphy to MOH Liquidating Trust (February 5, 2013).

**C.     The Defendants Attack Mr. Zucker For Speaking Out.**

58.     Having obliterated M&O, and having salted the earth by undermining the MOH Trust's ability to satisfy whatever claims that M&O might have left, CPSC turned its sights on Mr. Zucker.

59.     On February 11, 2013, CPSC moved to amend its complaint in the CPSC Proceeding to add Mr. Zucker personally as a respondent.  *See* Ex. 3, CPSC Motion for Leave to File Second Amended Complaint and Memorandum in Support (February 11, 2013).

60.     The amended complaint seeks an order requiring Mr. Zucker personally to conduct a full recall of M&O's products, at an estimated cost of $57 million.

61.     This would require Mr. Zucker personally to notify all distributors of M&O's products to stop distributing the products, to notify state and local public health officials, to mail notice to each distributor and retailer of M&O's products, to refund consumers the purchase price of M&O's products, to reimburse retailers for their expenses in carrying out the recall, to submit monthly reports to CPSC documenting his progress, and, for a period of five years, to keep records of his actions in conducting the recall.  *See* Ex. 4, Second Amended Complaint Against Maxfield & Oberton Holdings, LLC and Craig Zucker (February 11, 2013).

62.     Never in the history of CPSC has an action been filed to require an officer or former officer of a company to personally conduct a recall.

63.     Noting that M&O has now "purported" to dissolve, CPSC offered its theory that Mr. Zucker must stand in the company's shoes because he had exercised personal control over M&O's acts and practices.  *See* Ex. 3 at 2.

64.     Inexplicably, CPSC made no attempt to amend its complaint to bring an action against MOH Trust, the only entity with any legal responsibility to pay the claims of M&O.

65.     Leaving little doubt as to why Mr. Zucker was singled out for such unprecedented treatment, CPSC presented a laundry list of Mr. Zucker's infractions, most of which are related to Mr. Zucker's interactions with and protected political speech regarding CPSC and with Congress and the public about CPSC's abuse of its power.

- "Mr. Zucker met personally with a CPSC Commissioner regarding the M&O Subject Products. . . . He held a subsequent meeting on April 10, 2012, with another CPSC Commissioner and then met separately that same day with CPSC staff to discuss the M&O Subject Products." Ex. 3 at 3.

- "Mr. Zucker filed a report on the Subject Products in response to staff's requests for information . . . ." *Id.*

- "Mr. Zucker also corresponded personally with other CPSC staff about CPSC actions connected with the filing of the Complaint." *Id.* at 4.

- "Mr. Zucker also personally lobbied members of Congress and the President of the United States, again communicating on issues related directly, and solely, to the matter at issue here." *Id.* (citing emails to Congressional staffers and an open letter to President Obama published in the *Washington Post*).

- "Similarly, in numerous interviews on television, in print, and in internet media, Mr. Zucker has responded to Complaint Counsel's allegations on behalf of M&O." *Id.* at 5.

- "In 'A Letter from Our CEO: The Real Story Behind Why We're Fighting,' Mr. Zucker described at length and in detail M&O's interactions with CPSC staff, and concluded: 'We are fighting the CPSC action because we believe they are wrong.'" *Id.*

66.     CPSC played fast and loose with the facts to justify its assault on Mr. Zucker. For example, in Exhibit E to the motion to amend CPSC's complaint that was filed February 11, 2013, *available at* http://www.cpsc.gov//Global/Recalls/Recall-Lawsuits/maxfield29b.pdf (accessed Nov. 8, 2013), complaint counsel represented that the email attached at page 69 was a personal communication from Mr. Zucker.  CPSC, however, doctored this Exhibit to omit the footer demonstrating that it was a

form communication sent to all persons who subscribed to Buckyballs® mailing list.  The omitted footer read:

> Sorry . . . cannot be applied to previous orders or combined with other promotions.

> Unsubscribe swolfson@cpsc.gov from this list.  |  Forward this email to a friend

*See* Ex. 5.

67.     In short, by exercising his Constitutional rights to free speech, to free association, to conduct public advocacy, and to petition government officials for redress of grievances, Mr. Zucker has been a thorn in CPSC's side and so CPSC has targeted him for retribution.

68.     On information and belief, CPSC has taken the unprecedented action of singling out Mr. Zucker, and naming him individually, to punish him and to deter and chill him and other corporate officers from exercising their Constitutional rights to free speech, to free association, and to petition government officials for redress contrary to the First and Fifth Amendments of the United States Constitution.

**D.      Defendants Create New Powers To Abuse Mr. Zucker.**

69.     CPSC's authority to adjudicate an order for remedial actions concerning a consumer product, including notice to distributors and the public and conducting a recall, is governed by 15 U.S.C. § 2064.

70.     CPSC's jurisdiction is over "the manufacturer or any distributor or retailer" of the product.  15 U.S.C. § 2064(c)-(d).

71.     CPSC alleges that Mr. Zucker is a manufacturer and a distributor of Buckyballs® and Buckycubes®.  However, as a matter of law, Mr. Zucker is neither one.

72.     A "manufacturer" is defined as a "person who manufactures or imports a consumer product," and a distributor is defined as, "a person to whom a consumer product is delivered or sold for purposes of distribution in commerce."  15 U.S.C. § 2052(a).

73.     In other words, CPSA gives CPSC no adjudicative authority over individual officers of employees of a manufacturer, distributor, or retailer of the product.

74.     Mr. Zucker has never personally manufactured, imported, or distributed anything. Yet, to punish him for speaking out, CPSC drives a bulldozer through the limits set by the statute's plain language via its extraordinary and unprecedented expansion of the "responsible corporate officer doctrine," also known as the "*Park* doctrine."  *See United States v. Park*, 421 U.S. 658 (1975).

75.     The *Park* doctrine is applied by the government only in the rarest of circumstances, usually to hold responsible corporate officers personally liable for criminal violations by the companies they oversee.

76.     This extraordinary doctrine was the asserted basis for the administrative law judge's decision affirming CPSC's authority over Mr. Zucker, but it has no bearing here and it does not justify the CPSC's overreach.

77.     First, 15 U.S.C. § 2064 does not authorize imposition of liability on employees of a corporate entity.  Where Congress intended that such liability can be imposed under CPSA, it has specifically said so.  For example, 15 U.S.C. § 2064, authorizes remedial orders only against "the manufacturer or any distributor or retailer" of the product.  By contrast, 15 U.S.C. § 2070 specifically authorizes criminal liability for an "individual director, officer, or agent of a corporation who knowingly and willfully authorizes, orders, or performs" certain criminal violations set forth in the statute.

78.     Second, every case in every context in which the responsible corporate officer doctrine has been applied, whether civil or criminal, has involved a predicate violation of law by the corporate entity.  This is the touchstone for individual corporate officer responsibility, because society rightly expects corporate officers to ensure that their corporations do not engage in criminal conduct or other violations of law.  Here, however, even CPSC admits that nothing illegal has been done.  *See, e.g.,* Ex. 1, Letter from CPSC General Counsel Cheryl A. Falvey to Alan H. Schoem, Esq. (July 20, 2012) ("I am confirming that it is not a violation of any law administered by the CPSC for any retailer to continue to sell Buckyballs and Buckycubes. . . . [I]t is not in violation of any law CPSC administers until we have obtained a court order . . . or the firm voluntarily agrees to a corrective action.").

79.     In no case has a corporate officer ever been held personally liable for corporate activity that was lawful when conducted.

80.     Third, the remedial action that CPSC is authorized to impose upon "the manufacturer or any distributor or retailer" of a product is not a criminal sentence or even a fine or other monetary liability or penalty.  It is a product recall.  Practically speaking, the nature of CPSC's statutory authority remedy must be limited to the company that manufactured, distributed, or sold the product in the first place, and not to any individual employee, especially not former employees like Mr. Zucker.  A product distributed by thousands of retailers over the course of almost four years, of which allegedly more than 2.5 million sets have been sold, cannot be effectively recalled by a single individual without a business organization to support him and CPSC's action against Mr. Zucker is plainly not something Congress intended to occur.

81.     Finally, the exercise of adjudicative authority over an individual officer of a company that CPSC concedes engaged in no illegal activity improperly rewrites CPSA.  If CPSC can seek to

personally destroy a company employee or official through the unilateral expansion of its administrative jurisdiction, as it seeks to do here, then CPSA's limits on CPSC's authority are a nullity.

**E.      CPSC Runs A Rigged Game, Leaving Mr. Zucker Without Options.**

82.      Through counsel, Mr. Zucker moved to intervene in the CPSC Proceeding to oppose its motion adding him as a respondent.

83.      The Administrative Law Judge ("ALJ") granted Mr. Zucker's motion but rejected his opposition.  On May 3, 2013, the ALJ granted CPSC's motion for leave to file the amended complaint and added Mr. Zucker as a respondent to the CPSC Proceeding against M&O.  *See* Ex. 6, Order Granting CPSC Motion for Leave to File Second Amended Complaint Against Craig Zucker (May 3, 2013).  The ALJ's affirmation of CPSC's power grab violated 5 U.S.C. § 706(2)(A) because it was arbitrary, capricious, an abuse of discretion, and not in accordance with law and violated 5 U.S.C. § 706(2)(C) because it authorized CPSC to exceed its statutory jurisdiction and authority.

84.      Mr. Zucker sought leave to appeal the order subjecting him to CPSC's adjudicative authority to CPSC, but this was denied him on June 19, 2013.  *See* Ex. 7, Order Denying Craig Zucker's Motion to Appeal (June 19, 2013).

85.      For Mr. Zucker, all further resort to CPSC's administrative process, whether through the CPSC Proceeding or elsewhere, is futile.

86.      In truth, from the beginning CPSC's administrative action was an unlawful show designed to bleed first M&O and then Mr. Zucker to death, for CPSC's mind was made up and the outcome decided before the first pleading was ever filed.

87.      For example, on April 12, 2013, while both the CPSC Proceeding to determine whether Buckyballs® and Buckycubes® were "defective" as a matter of law and CPSC's extraordinary motion

to name Mr. Zucker individually were both underway and ostensibly "undecided," CPSC issued a recall notice for Buckyballs® and Buckycubes®.

88.     CPSC said that "in cooperation with six retailers" it was "announcing the voluntary recall of all Buckyballs and Buckycubes" because "these products contain defects in the design, warnings and instructions, which pose a substantial risk of injury and death to children and teenagers."  *See* Ex. 8, CPSC, "Six Retailers Announce Recall of Buckyballs and Buckycubes High-Powered Magnet Sets Due to Ingestion Hazard (Recall 13-168)," *available at* http://www.cpsc.gov/en/Recalls/2013/Six-Retailers-Announce-Recall-of-Buckyballs-and-Buckycubes-High-Powered-Magnet-Sets/ (April 12, 2013) (accessed Nov. 10, 2013).   On information and belief, Defendant Tenenbaum and all of the other Commissioners must have approved this recall and signed off on the findings related to defects, risk, and hazard, before it was announced.

89.     She and the other CPSC commissioners are the final decision makers in this case and, subject only to limited review by an Article III court, they are free to do whatever they want with respect to the scope of CPSC's jurisdiction, to Buckyballs® and Buckycubes®, and to Mr. Zucker, no matter what the "independent" ALJ might find or decide.

90.     Therefore, the April 12 recall notice, in which CPSC made its conclusory finding that Buckyballs® and Buckycubes® are in fact defective and pose a "substantial risk of injury and death to children and teenagers" rendered the CPSC Proceeding, which was supposed to fairly adjudicate these things, nothing more than a bad charade, for it is clear where defendants stand on the matter.

91.     Mr. Zucker is now defending himself at great economic and reputational cost and risk against an out-of-control bureaucracy that, after destroying a thriving and legal business, now aims to devastate him as well.

92.     Defendant Tenenbaum and the other commissioners owed Mr. Zucker, and all of the other respondents before them, a fair, objective, and level review of their causes.  Instead, she and CPSC have brazenly abused their power and disregarded their public trust by assuming for themselves the authority to make up the law, to prosecute the supposed "violations," to find the facts, to render a verdict, and then to decide the sentence.

93.     The defendants' conduct clearly shows that the CPSC Proceeding is nothing more than the drapery around the defendants' decision to break Mr. Zucker.  Therefore, it would be manifestly unfair and incongruous to force Mr. Zucker back into the CPSC Proceeding or any other administrative process run by CPSC.  There is no fairness or due process to be found there for him.

94.     Mr. Zucker is trapped, facing both personal financial ruin and the destruction of his business reputation, in a rigged game that the house cannot lose and that he cannot win.   This Court is his only hope for fairness and avenue of redress.

## Claims For Relief

**First Claim For Relief: The Administrative Procedure Act.**

95.     Mr. Zucker repeats paragraphs 1-94.

96.     CPSC has asserted jurisdiction over Mr. Zucker individually pursuant to 15 U.S.C. § 2064, claiming that Mr. Zucker is a "manufacturer" and a "distributor" pursuant to 15 U.S.C. § 2052(a).

97.     Mr. Zucker is not a "manufacturer" or a "distributor" because he has never personally manufactured, imported, or distributed any consumer products.

98.     CPSC's actions against him, apparently in retaliation for the exercise of Constitutionally-protected rights, are therefore in excess of its statutory authority.  CPSC has wrongfully targeted Mr. Zucker in his individual capacity, even though there was another entity, MOH Trust, that was

responsible for paying the claims against M&O and that CPSC could have made a party to the CPSC Proceeding instead.

99.     Also, CPSC's attack against Mr. Zucker is based on an unprecedented expansion of the "responsible corporate officer doctrine," also known as the "*Park* doctrine." This doctrine is rarely applied, but when it is, the focus is ordinarily on holding corporate officers personally liable for *criminal violations* by the companies they oversee.  In all cases, the doctrine is applied after there has been a violation of law, not in advance of any such violation.  CPSC's application of the *Park* doctrine in this case goes far beyond the boundaries of its legal authority.

100.     Mr. Zucker's appeal of CPSC's unprecedented action adding him as a personal respondent in the CPSC Proceeding was rejected on June 19, 2013.  *See* Ex. 7.  This determination is therefore final agency action.

101.     Also, the defendants have predetermined the outcome of the CPSC Proceeding in all material respects and resort to their administrative process would in all likelihood be futile.

102.     Also, CPSC's decision to assert authority over Mr. Zucker also determined his legal rights or obligations and resulted in immediate legal consequences by forcing him to defend an unlawful adjudicative proceeding and risk serious penalties for noncompliance.

103.     Also, CPSC's decisions to assert jurisdiction and authority over Mr. Zucker, and/or to predetermine the outcome of the CPSC Proceeding were arbitrary and capricious, an abuse of discretion, not in accordance with law, in excess of CPSC's statutory jurisdiction and authority and contrary to Constitutional right for CPSC has utterly failed to provide Mr. Zucker with a fair and level review and denied him procedural and substantive due process.

104.    CPSC's determination that it has jurisdiction over Mr. Zucker is a clear error on purely legal questions, including an interpretation of the statutory terms "manufacturer" and "distributor" under 15 U.S.C. § 2052(a)(11), (8) and the *ultra vires* nature of the defendants' conduct in this case.

105.    Statutory construction is a question on which courts, and not administrators, are more expert and so this matter is suitable for judicial review.

106.    The decision that CPSC's jurisdiction extends to Mr. Zucker is final agency action and his only proper remedy lies in this Court.

**Second Claim For Relief: For Violation Of The First And Fifth Amendments To The United States Constitution.**

107.    Mr. Zucker repeats paragraphs 1-106.

108.    Upon information and belief, as demonstrated by CPSC's allegations in its Motion for Leave to File Second Amended Complaint and Memorandum in Support (February 11, 2013), *See* Ex. 3 at 3-5, CPSC has singled out Mr. Zucker for selective administrative adjudication to punish him and to chill and deter him and other corporate officers from exercising their Constitutional rights to free speech, to free association, to publicly advocate for their companies, and to petition government officials for redress of their grievances.

109.    Therefore, the defendants' actions against Mr. Zucker have the intent and the foreseeable effect of chilling and restricting the exercise of Constitutionally-protected rights in violation of the First Amendment of the United States Constitution, and to deny him due process of law under the Fifth Amendment of the United States Constitution.

110.    The defendants acted under color of law.

111.    Also, the defendants have predetermined the CPSC Proceeding's outcome in all material respects thereby denying Mr. Zucker substantive and procedural due process.

112.     Mr. Zucker has been damaged due to the defendants' violations of his constitutional rights, and will suffer irreparable injury absent the award of a preliminary and permanent injunction prohibiting the defendants from exercising adjudicative authority over him.

### Relief Requested

WHEREFORE, Mr. Zucker requests that the Court:

A.     Declare that CPSC's actions with respect to Mr. Zucker, including but not limited to its assertion of jurisdiction over him as a manufacturer and distributor of consumer products distributed in commerce, are *ultra vires*, arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law and in excess of CPSC's statutory authority.

B.     Declare that the defendants' selective assertion and exercise of adjudicative authority over Mr. Zucker and/or their predetermination of the CPSC Proceeding violate his rights to freedom of speech, to freedom of association, and to petition government officials for redress of grievances under the First Amendment of the Constitution and/or his right to substantive and procedural due process of law under the Fifth Amendment of the Constitution.

C.     Preliminarily and permanently enjoin the defendants from asserting or exercising adjudicative authority over Mr. Zucker in his individual capacity.

D.     Award Mr. Zucker his costs and reasonable attorneys' fees in defending himself before CPSC and in pursuing this action under the Equal Access to Justice Act and under such other authorities that may authorize this relief.  28 U.S.C. § 2412.

E.     Order such other and further relief as deemed just and proper by the Court.

Respectfully submitted,


_____/S/_____
Daniel Z. Epstein, Esq.
Cause of Action, Inc.
1919 Pennsylvania Ave., NW, Suite 650
Washington, D.C. 20006
Phone: 202.499.4232
Fax: 202.330.5842
Email:daniel.epstein@causeofaction.org
U.S. District of Maryland Bar No. 18344


_____/S/_____
Reed D. Rubinstein, Esq.
Dinsmore & Shohl, LLP
801 Pennsylvania Ave., NW, Suite 610
Washington, D.C. 20006
Telephone: 202.372.9120
Fax: 202.372.9141
Email: reed.rubinstein@dinsmore.com
*As Counsel to Cause of Action, Inc.*

November 12, 2013